[No. D036202. Fourth Dist., Div. One. Feb. 1, 2002.]

SNAPP & ASSOCIATES INSURANCE SERVICES, INC., Plaintiff and Appellant, v.
MALCOLM BRUCE BURLINGAME ROBERTSON et al., Defendants and Respondents.

886

## COUNSEL

Gastone Bebi and John A. Mitchell for Plaintiff and Appellant.

Gentes & Garcia and Eulalio J. Garcia for Defendants and Respondents.

## OPINION

**BENKE, Acting P. J.**—Plaintiff Snapp & Associates Insurance Services, Inc. (Snapp), appeals a judgment in favor of defendants Malcolm Bruce Burlingame Robertson and Robertson-Rock Insurance Agency (together Robertson) entered after the trial court determined in a bifurcated trial that its action for conversion and related counts is time-barred. Snapp contends it raised triable issues of fact regarding when it knew or should have known of potential claims against Robertson, and the statutes of limitations were tolled by Robertson's fraudulent concealment of facts giving rise to claims against him. We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In September 1992 Snapp hired Timothy R. Gwin to sell insurance for Snapp, an insurance broker. Under a written agreement, Snapp asserted ownership of 232 client accounts that Timothy R. Gwin brought with him from his previous business, TRG Insurance Agency (the TRG accounts).

In February 1993 Snapp learned that Gwin had deposited commissions earned on the TRG accounts into his own bank account. After Snapp confronted Gwin, he absconded with the TRG account files. Snapp terminated Gwin's employment on March 1, 1993, after which he was unable to place insurance without going through another broker. Snapp immediately

began receiving notices that Robertson was acting as broker of record for Gwin on some of the TRG accounts.

In March 1993 Snapp sued Gwin for recovery of the TRG account files and damages. In May 1993 Snapp obtained a preliminary injunction prohibiting Gwin from doing business with any clients he obtained while employed by Snapp. However, in exchange for obtaining an $80,000 bond, Gwin was allowed to retain and service the TRG accounts pending resolution of the case.

On May 20, 1993, Snapp's counsel sent Robertson a letter advising him of the Gwin action and demanding that he "cease and desist from using any information or material provided by . . . Gwin, if any, which is the subject of the enclosed Preliminary Injunction." In response, Robertson agreed to "comply with the injunction" and requested a list of the TRG accounts Gwin was allowed to continue servicing. Snapp provided Robertson with the list.

In January or February 1994 Gwin discontinued business and moved to Belize. In its case against Gwin, Snapp subpoenaed Robertson to appear for deposition and produce documents relevant to the disposition of the TRG accounts. On August 16, 1994, Snapp's counsel, Robert Zickert, signed a declaration in response to Robertson's objection to the subpoena duces tecum. Zickert wrote: "SNAPP, based on information obtained in the insurance industry, learned that [Gwin] 'associated' with [Robertson] and may have in fact sold or relinquished his 'Book of Business' to . . . Robertson."

Snapp took Robertson's deposition in September 1994. He produced a June 1993 contract between him and Gwin under which they would share commissions on business Gwin generated. Robertson testified that in late 1993 he offered to purchase Gwin's "book of business" for "a percentage of the renewing commissions," but a purchase was never finalized. Robertson denied having possession of the TRG account files, but admitted he continued doing business with some of Gwin's clients after he moved to Belize. Robertson testified he paid Gwin less than $500 in commissions in 1993 and between $500 and $1,000 in commissions in 1994.

Gwin corroborated in his deposition that he did not sell the TRG accounts to Robertson. Gwin testified he "just ceased business" and stored the TRG files in Robertson's garage. Gwin denied receiving any payments on the TRG accounts after January 1994.

Snapp's case against Gwin was subject to binding arbitration. In October 1995 the arbitrator found that Gwin defrauded Snapp, wrongfully converted

the TRG accounts and misappropriated commissions. The arbitrator awarded Snapp $327,452 and $93,500 in compensatory and punitive damages, respectively, along with attorney fees and costs. The trial court confirmed the award. Snapp recovered $85,000 of the judgment, presumably on the bond, but further collection efforts were thwarted or delayed by Gwin's bankruptcy proceeding.

In August 1997 the bankruptcy trustee's attorney deposed Gwin. Unlike previously, Gwin testified that he and Robertson entered into a written agreement in February 1994 for Robertson's purchase of the TRG accounts "for $1,500 per month for one year." The trustee discovered documents showing that Robertson paid Gwin $1,500 per month and also paid him "$11,500 for 'physical assets'" in December 1993. The bankruptcy court revoked Gwin's discharge and referred him for criminal prosecution.

On August 21, 1997, Snapp filed a complaint against Robertson. The first amended complaint included causes of action for: (1) conversion; (2) misappropriation of trade secrets in violation of the Uniform Trade Secrets Act (Civ. Code, § 3426.1); (3) fraudulent transfer in violation of the Uniform Fraudulent Transfer Act (Civ. Code, § 3439.01); (4) unfair competition (Bus. & Prof. Code, § 17200); (5) interference with contract; (6) intentional interference with economic advantage; and (7) fraudulent concealment.[1]

In a bifurcated trial, the court determined Snapp's action is time-barred because the longest applicable statute of limitations is four years, and it had actual or constructive knowledge no later than May 1993 of a potential cause of action against Robertson related to the TRG accounts. Judgment was entered for Robertson on May 3, 2000.

## DISCUSSION

### I

### *Standard of Review*

■ Resolution of a statute of limitations defense is normally a question of fact. However, when the uncontradicted facts established through discovery are susceptible of only one legitimate inference, the trial court may

---

[1]The first amended complaint also included counts for "creditor's suit" (Code Civ. Proc., § 708.210 et seq.) and constructive trust. Robertson obtained summary adjudication on the former count and Snapp has presented no authority or argument regarding the latter count, thereby waiving appellate review. (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 981-982 [21 Cal.Rptr.2d 834]; *Unilogic, Inc. v. Burroughs Corp.* (1992) 10 Cal.App.4th 612, 624, fn. 2 [12 Cal.Rptr.2d 741].)

determine the matter as one of law. (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112 [245 Cal.Rptr. 658, 751 P.2d 923].) We independently review the propriety of the court's ruling. (*Frankel v. Kizer* (1993) 21 Cal.App.4th 743, 749 [26 Cal.Rptr.2d 268].)

## II

### *Fraudulent Concealment*

Preliminarily, we dispose of Snapp's contention the statutes of limitations were tolled under a "fraudulent concealment" theory. ■ "The doctrine of fraudulent concealment, which is judicially created [citations], limits the typical statute of limitations. '[T]he defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations . . . .' [Citations.] In articulating the doctrine, the courts have had as their purpose to disarm a defendant who, by his own deception, has caused a claim to become stale and a plaintiff dilatory. [Citations.]" (*Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 533 [85 Cal.Rptr.2d 257, 976 P.2d 808].)

"The doctrine of fraudulent concealment of the cause of action, which applies to any type of case . . . , has an effect similar to the statutory rule of delayed accrual in fraud cases under [Code of Civil Procedure section 338, subdivision (d)]. Because fraud is the basis of the estoppel, the same pleading and proof is required in the fraud cases, i.e., the plaintiff must show (a) the substantive elements of fraud, and (b) an excuse for late discovery of the facts. [Citations.] [¶] But the fraudulent concealment cases are distinguishable from . . . fraud cases in that different periods [of limitation] may be involved." (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 695, pp. 886-887.) Fraudulent concealment prevents the running of the statutes of limitations germane to the action. (*Ibid.*)

■ Snapp contends Robertson fraudulently concealed a cause of action against him in September 1994 when he denied in deposition that he purchased the TRG accounts. Snapp asserts it did not discover a potential claim against Robertson until August 1997 when his purchase of the TRG accounts was revealed during Gwin's bankruptcy proceeding. Snapp's position lacks merit because the August 16, 1994, declaration of Zickert shows that "based on information obtained in the insurance industry" Snapp then knew Robertson may have purchased the TRG accounts. Moreover, as discussed below, Snapp alleged that Robertson's wrongdoing began in May 1993 when he was brokering the accounts for Gwin.

The fraudulent concealment doctrine " 'does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a

plaintiff is on notice of a potential claim.' " (*Rita M. v. Roman Catholic Archbishop* (1986) 187 Cal.App.3d 1453, 1460 [232 Cal.Rptr. 685].) A plaintiff is under a duty to reasonably investigate, and a *suspicion* of wrongdoing, coupled with a knowledge of the harm and its cause, commences the limitations period. (*Jolly v. Eli Lilly & Co., supra,* 44 Cal.3d 1103, 1112.)

## III

### Applicable Statutes of Limitations

Snapp contends that even without the benefit of equitable tolling, the court erred by determining each of its causes of action is time-barred because there are questions of fact regarding when it knew, or reasonably should have known, of its causes of action against Robertson. Robertson counters that the undisputed evidence establishes the applicable statute of limitations had expired as to each claim before Snapp filed its complaint.

The parties agree the longest applicable statute of limitations is four years. An action for the fraudulent transfer of the debtor's property with the intent to "hinder, delay, or defraud any creditor of the debtor" (Civ. Code, § 3439.04, subd. (a)) must be brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." (Civ. Code, § 3439.09, subd. (a); *Monastra v. Konica Business Machines, U.S.A., Inc.* (1996) 43 Cal.App.4th 1628, 1645 [51 Cal.Rptr.2d 528].)

█ An action for unfair competition under Business and Professions Code section 17200 "shall be commenced within four years after the cause of action accrued." (Bus. & Prof. Code, § 17208.) The "discovery rule," which delays accrual of certain causes of action until the plaintiff has actual or constructive knowledge of facts giving rise to the claim, does not apply to unfair competition actions. Thus, "the statute begins to run . . . irrespective of whether plaintiff knew of its accrual, unless plaintiff can successfully invoke the equitable tolling doctrine." (*Stutz Motor Car of America v. Reebok Intern., Ltd.* (C.D.Cal. 1995) 909 F.Supp. 1353, 1363; *Suh v. Yang* (N.D. Cal. 1997) 987 F.Supp. 783, 795.)

█ Snapp contends these causes of action were timely because it had no claims against Robertson until February 1994 when he allegedly purchased the TRG accounts from Gwin. Snapp asserts that Robertson's earlier brokering of the accounts did not put it on notice of a potential action against

him because the preliminary injunction allowed Gwin to continue servicing them and he could only do so through another broker.

However, the first amended complaint contains allegations that Robertson's wrongdoing began in 1993 when he initially began brokering the accounts for Gwin. It is alleged in the cause of action for unfair competition that Robertson's "solicitation of [Snapp's] former employees and customers started in or about May 1993, and is on-going." It is alleged in the cause of action for misappropriation of trade secrets that the misappropriation of client information occurred in May 1993. Notably, at trial Snapp sought to introduce the damage calculations of its owner, Jack Toon, which included amounts for commissions paid on TRG accounts in 1993 before Robertson's alleged purchase of the accounts.

It is evident that although Gwin was authorized to continue servicing the TRG accounts during the pendency of Snapp's action, it claimed entitlement to any commissions earned on them. ██ Snapp knew of potential claims against Robertson for his retention of commissions on the TRG accounts more than four years before it filed its complaint, and thus its action is barred.[2] Given our holding, we need not address Snapp's contentions regarding the trial court's alternative grounds for dismissing the action.

## DISPOSITION

The judgment is affirmed. Robertson is awarded costs on appeal.

McDonald, J., and O'Rourke, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 1, 2002. Baxter, J., did not participate therein.

---

[2]Snapp contends its cause of action for conversion, which has a three-year statute of limitations (Code Civ. Proc., § 338, subd. (c)), was timely because "the [TRG] accounts were not adjudged to be the property of SNAPP until the arbitration award" was rendered in October 1995. However, a prior adjudication of ownership is not an element of a conversion claim. Rather, the plaintiff's right to ownership or possession of the property at the time of conversion is an element to be proven in the conversion case. (*Messerall v. Fulwider* (1988) 199 Cal.App.3d 1324, 1329 [245 Cal.Rptr. 548].)