[No. B199461. Second Dist., Div. Seven. Mar. 2, 2009.]

KIRK BROBERG, as Trustee, etc., et al., Plaintiffs and Appellants, v. THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA et al., Defendants and Respondents.

914

### COUNSEL

Gianelli & Morris, Timothy J. Morris, Richard R. Fruto; David A. Lingenbrink; Agnew & Brusavich, Bruce M. Brusavich, Lawrence D. Marks; Esner, Chang & Ellis, Stuart B. Esner and Holly N. Boyer for Plaintiffs and Appellants.

Skadden, Arps, Slate, Meagher & Flom, Lance A. Etcheverry, Thomas J. Dougherty and David S. Clancy for Defendant and Respondent The Guardian Life Insurance Company of America.

Lewis Brisbois Bisgaard & Smith and Joseph C. Campo for Defendant and Respondent John A. Davidson.

### OPINION

**PERLUSS, P. J.**—The Guardian Life Insurance Company of America (Guardian Life) allegedly sold Dr. David C. Powell a whole life insurance policy in 1993 by falsely promising through its agent John A. Davidson that earnings from the policy would be sufficient to pay the premium costs after the 11th year and by providing misleading marketing materials that similarly represented out-of-pocket premium costs would be eliminated in the 12th year of the policy's life—sometimes referred to as a "vanishing premium" policy. In a complaint for fraud, negligent misrepresentation and related

statutory violations, Dr. Powell and Kirk Broberg as trustees of the Powell Irrevocable Trust (Powell) alleged they did not discover they had been deceived until Guardian Life billed them for additional out-of-pocket premium payments in September 2004. Notwithstanding these allegations, the trial court sustained without leave to amend Guardian Life's and Davidson's demurrers to the first amended complaint, concluding the claims accrued when Powell purchased the policy in 1993 and were time-barred. The court also found, as a matter of law, Powell would be unable to establish justifiable reliance on the alleged misrepresentations because of inconsistent language in the policy itself and in footnote disclosures to the marketing materials. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Vanishing Premium, Whole Life Policy*

Powell purchased a $500,000 whole life insurance policy from Guardian Life on August 27, 1993.[1] The policy was described to Powell by Davidson as a vanishing life policy—that is, one where, after a certain number of out-of-pocket premium payments had been made, the policy itself would generate sufficient sums through its dividend and interest income to pay future premiums for the balance of the insured's life.

As part of his effort to sell the Guardian Life policy, Davidson provided Powell a three-page illustration (entitled "Guardian/GIAC Lifeplan Illustrations") that depicted the elimination of out-of-pocket premiums in the 12th year of the policy's life. The first page of the illustration indicates it was prepared for Powell and was not a preprinted, generic form. Handwritten on the top of the first page are the notations "standard option" and "11 year." The printed portion of the first page includes the term "vanishing premium" and contains a 30-year schedule that reflects an annual premium of $11,736 to be paid in each of the first 11 years and no "annual outlay" after the 11th year. There are no disclaimers, cautionary language or footnotes anywhere on the first page of the illustration; and, in particular, nothing suggesting the "annual outlay" column or the series of zeros after year 11 in that column is contingent on Guardian Life's future dividend scale.

---

[1] Our description of the factual background for Powell's claims is based on the allegations in the first amended complaint, which we accept as true to determine whether Guardian Life's demurrer should have been sustained or overruled. (*Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 373 [36 Cal.Rptr.3d 31]; *Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 182–183 [123 Cal.Rptr.2d 637] ["[t]he reviewing court accepts as true all facts properly pleaded in the complaint in order to determine whether the demurrer should be overruled"]; see *Mack v. Soung* (2000) 80 Cal.App.4th 966, 971 [95 Cal.Rptr.2d 830] [all properly pleaded allegations deemed true, regardless of plaintiff's ability to later prove them].)

Powell's first amended complaint alleges Guardian Life knew at the time the policy was sold this portion of the illustration in its marketing materials was false and deceptive: "It knew that its term 'vanishing premium' indicated to the reasonable consumer that out of pocket premiums would cease after which all premiums would be paid from the policy's internal values, when this was not the case. . . . Guardian knew that the dividend scale upon which the illustration was based was not likely to continue, making it highly likely—contrary to the guarantees noted in the illustration and made by its agent Davidson—that additional out of pocket premium payments, beyond the illustrated 11 years, would become necessary."

The second page of the three-page illustration continues the schedule from the first page for an additional five years. No "annual outlay" is shown in any of those years. The second page does include the general statement, "Please see attached sheets with important footnotes," but once again there is no cautionary language directed to the "annual outlay" column. The third page of the document contains a single, lengthy endnote—39 single-spaced lines, all capitalized—with various conditions, qualifications and limitations about the life insurance product being offered. In the middle of the page, not set apart in any way from the surrounding text by contrasting type, font, color, border or spacing, the following disclaimer appears: "Figures depending on dividends are neither estimated nor guaranteed, but are based on the 1993 dividend scale. Actual future dividends may be higher or lower than those illustrated depending on the company's actual future experience." Following another dozen lines of explanation—all in the same typeface—a further caution is provided: "The number of years of required cash outlays depends upon age at issue, policy class, face amount, and continuation of The Guardian's current dividend scale, and assumes no policy loans."

2. *Powell's Complaint for Fraud, Negligent Misrepresentation and Statutory Violations*

For 11 years Powell paid the annual premiums. In September 2004 Guardian Life informed Powell, because dividends had steadily declined, he would be required to continue making out-of-pocket premium payments, extending beyond the 11th year of the policy, for the policy to remain in effect. Believing the demand for further out-of-pocket premiums breached Guardian Life's sales promises, on June 30, 2006 Powell filed a complaint for fraud, negligent misrepresentation, unfair competition and false advertising (Bus. & Prof. Code, §§ 17200 et seq., 17500 et seq.) and violation of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) (CLRA) against Guardian Life and Davidson arising out of the marketing, promotion and sale of the vanishing premium policy.

### 3. *Guardian Life's Demurrer and the Trial Court's Orders*

Guardian Life demurred to the complaint, contending that Powell's misrepresentation claims accrued when he purchased the vanishing premium policy in 1993 and thus were time-barred and that Powell could not establish justifiable reliance on the alleged misrepresentations as a matter of law. In addition, Guardian Life asserted the unfair competition claim was time-barred and the CLRA does not apply to transactions involving insurance.

More specifically, Guardian Life argued neither the policy nor the marketing illustration, both of which were attached to Powell's complaint, offered any guarantees or made any promises concerning the income that would be earned by the policy over its life. To the contrary, according to Guardian Life, the illustration contains clear language explicitly disclaiming any such guarantee and cautions that "the number of years of required cash outlays depends on . . . continuation of the Guardian's current dividend scale . . . ." Moreover, the actual policy delivered to Powell a few weeks after the marketing materials stated premiums are "payable" "for life."

The trial court sustained the demurrer in part. In its tentative ruling, essentially adopted without change as its ruling after oral argument at the hearing, the court explained the disclaimer in the marketing illustration and the policy language itself were sufficient to give Powell at least inquiry notice, if not actual notice, as of August 1993 that earnings from the policy were not "guaranteed." Thus, the fraud and negligent misrepresentation claims, filed nearly 13 years later, were barred by the governing statute of limitations. The court also concluded the disclaimers, as a matter of law, precluded proof of justifiable reliance on any contrary promises by Davidson and Guardian Life. Finally, the court decided the cause of action under the CLRA was not viable because a contract for life insurance is not included within the statutory definition of "goods and services," based on the Supreme Court's decision in *Civil Service Employees Ins. Co. v. Superior Court* (1978) 22 Cal.3d 362, 376 [149 Cal.Rptr. 360, 584 P.2d 497] ("insurance is technically neither a 'good' nor a 'service' " within the meaning of the CLRA).

The court overruled Guardian Life's demurrer as to Powell's unfair competition cause of action, however, concluding, although the allegations in the complaint could not support relief under the "vanishing premium" theory, they were sufficient to state a claim that Guardian Life's actions amounted to an unfair and unlawful sales tactic. The court also granted Powell leave to amend to attempt to plead a different, albeit related, fraud theory—"a claim for . . . knowing non-disclosure of a[n] established plan by defendant to reduce dividends in future years which was known, but not disclosed, when the Illustration was prepared and provided to plaintiffs."

Powell filed an amended complaint on November 29, 2006, alleging the marketing of "fraudulent vanishing premiums" was perpetuated by the practice of "substitution" or "pegging" and asserting, at the time the policy was sold, Guardian Life knew additional out-of-pocket premiums would be required if dividend rates dropped. Powell further alleged that in 1993 Guardian Life was already engaged in a plan to gradually "ratchet down" its dividend scale from the artificially high levels it had paid in the early to mid-1980's to generate whole life insurance sales and, in an effort to prevent detection of the deceptive marketing scheme, failed to disclose the actual, annual reductions in its dividend scales effective January 1994, 1995 and 1996. Rather, Powell alleged, the annual statements for those years reported Guardian Life was providing the very dividends depicted at the time of sale as set forth in the policy illustration, thereby further deceiving Powell into believing the dividend scale used in the 1993 illustration was still effective.

Guardian Life demurred to the amended complaint on January 5, 2007; Davidson joined. At the conclusion of the hearing on February 9, 2007, the trial court concluded the allegations concerning Guardian Life's "pegging" and "substitution" scheme did not save Powell's claim from being time-barred, explaining Powell's 1997 annual statement showed a total cash value less than that displayed for the corresponding year on the policy illustration (the illustration had a value of $23,642; the 1997 annual benefit statement showed $23,362—a difference of $280). Thus, as early as 1997, Powell was on inquiry notice with respect to this potential claim. The court sustained Guardian Life's demurrer in its entirety and denied Powell's request for leave to further amend the complaint.

## DISCUSSION

### 1. *Standard of Review*

On appeal from an order dismissing an action after the sustaining of a demurrer, we independently review the pleading to determine whether the facts alleged state a cause of action under any possible legal theory. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189]; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) We give the complaint a reasonable interpretation, "treat[ing] the demurrer as admitting all material facts properly pleaded," but do not "assume the truth of contentions, deductions or conclusions of law." (*Aubry*, at p. 967; accord, *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) We liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Kotlar v. Hartford Fire Ins. Co.* (2000) 83 Cal.App.4th 1116, 1120 [100 Cal.Rptr.2d 246].)

## 2. The Trial Court Erred in Sustaining the Demurrer to the Fraud, Negligent Misrepresentation and Unfair Competition Claims

The trial court sustained Guardian Life's demurrer to the fraud, negligent misrepresentation and unfair competition claims without leave to amend, holding as to all three claims the disclaimers in the three-page marketing illustration, considered with the express policy terms, were sufficient (a) to trigger at least inquiry notice in 1993, thus starting the running of the statute of limitations on Powell's misrepresentation and statutory claims; and (b) to preclude justifiable reliance on any promises or representations that no additional out-of-pocket payments would be required after the 11th policy year. Although the analysis is slightly different, both points depend on the conclusion the page 3 disclaimers were sufficient, as a matter of law, to require Powell to exercise caution in proceeding with this purchase of the whole life insurance policy.

### a. The applicable limitations periods

The limitations period for Powell's fraud and negligent misrepresentation claims is three years. (Code Civ. Proc., § 338, subd. (d).) The limitations period begins to run only when the aggrieved party discovers "the facts constituting the fraud." (*Ibid.*; see *Royal Thrift & Loan Co. v. County Escrow, Inc.* (2004) 123 Cal.App.4th 24, 28 [20 Cal.Rptr.3d 37] [three-year limitations period for fraud claims in Code Civ. Proc., § 338, subd. (d), incorporates "the delayed discovery rule"].)

A claim for unfair competition under Business and Professions Code section 17200 must be brought within four years of its accrual. (Bus. & Prof. Code, § 17208; *Grisham v. Philip Morris U.S.A., Inc.* (2007) 40 Cal.4th 623, 639 [54 Cal.Rptr.3d 735, 151 P.3d 1151].) The Supreme Court has not yet decided, and the Courts of Appeal are in disagreement, whether the so-called delayed discovery rule applies to claims for unfair competition. (See *Grisham*, at p. 634, fn. 7; compare *Snapp & Associates Ins. Services, Inc. v. Robertson* (2002) 96 Cal.App.4th 884, 891 [117 Cal.Rptr.2d 331] [delayed discovery rule does not apply] with *Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1295 [119 Cal.Rptr.2d 190] [delayed discovery rule "probably" applies to unfair competition claims based on alleged nondisclosure of material information regarding vanishing premium policies].) At least in the context of unfair competition claims based on a defendant's allegedly deceptive marketing materials and sales practices, which is simply a different legal theory for challenging fraudulent conduct and where the harm from the unfair conduct will not reasonably be discovered until a future date, we believe the better view is that the time to file a section 17200 cause of action starts to run only when a reasonable person would have discovered the

factual basis for a claim. (See *April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 828 [195 Cal.Rptr. 421] [" '[t]he nature of the right sued on, not the form of the action . . . determines the applicability of the statute of limitations' "]; *id.* at p. 832 [delayed discovery rule may be applied to breaches of contract that can be, and are, committed in secret and where the harm flowing from those breaches will not be reasonably discoverable until a future time].)

> b. *The disclaimers were not so clear and obvious as to trigger notice or preclude reliance as a matter of law*

■ When a plaintiff reasonably should have discovered facts for purposes of the accrual of a cause of action or application of the delayed discovery rule is generally a question of fact, properly decided as a matter of law only if the evidence (or, in this case, the allegations in the complaint and facts properly subject to judicial notice) can support only one reasonable conclusion. (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112 [245 Cal.Rptr. 658, 751 P.2d 923].) Similarly, " '[w]hether reliance [on a misrepresentation] was reasonable is a question of fact for the jury, and may be decided as a matter of law only if the facts permit reasonable minds to come to just one conclusion.' " (*Grisham v. Philip Morris U.S.A., Inc., supra,* 40 Cal.4th at p. 637, italics omitted; accord, *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239 [44 Cal.Rptr.2d 352, 900 P.2d 601] [" 'Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact.' "].) Because this case is only at the demurrer stage, we cannot agree with the trial court the disclaimers in the policy illustration are so clear and so obvious that, as a matter of law, Powell's claims of delayed discovery and reasonable reliance must be rejected. (See generally *Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 922 [216 Cal.Rptr. 345, 702 P.2d 503] [in evaluating the sufficiency of a complaint, " 'the question of plaintiff's ability to prove [the] allegations, or the possible difficulty in making such proof does not concern the reviewing court' "].)

■ The adequacy of a disclaimer in the context of an action for fraud is judged by reference to the plaintiff's knowledge and experience: Only " '[i]f the conduct of the plaintiff [in relying upon a misrepresentation] in the light of his own intelligence and information was manifestly unreasonable' " will he be denied recovery. (*Hefferan v. Freebairn* (1950) 34 Cal.2d 715, 719 [214 P.2d 386]; accord, *Winn v. McCulloch Corp.* (1976) 60 Cal.App.3d 663, 671 [131 Cal.Rptr. 597].) "Generally, '[a] plaintiff will be denied recovery only if his conduct is manifestly unreasonable in the light of his own intelligence or information. It must appear that he put faith in representations that were "preposterous" or "shown by facts within his observation to be so

patently and obviously false that he must have closed his eyes to avoid discovery of the truth." [Citation.] Even in case of a mere negligent misrepresentation, a plaintiff is not barred unless his conduct, in the light of his own information and intelligence, is preposterous and irrational. [Citation.]' " (*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 865 [68 Cal.Rptr.3d 828].) "The effectiveness of disclaimers is assessed in light of these principles." (*Ibid.*)

■ Here, there is a question for the trier of fact concerning the presence or absence of a manifest unreasonableness in Powell's reliance on Guardian Life's deceptive policy illustration and its agent's promise that out-of-pocket premiums would not be required after the 11th year of the policy. Certainly, if the evidence ultimately establishes the disclaimers were read and understood, they may be sufficient to defeat Powell's claims. But the placement of the disclaimers (buried in a sea of same-sized, capitalized print), coupled with the absence of any cautionary language on the first page of the policy illustration, which contains the deceptive language and figures indicating Powell's out-of-pocket payments will "vanish," precludes a determination the disclaimers are adequate as a matter of law.

In a similar context, when interpreting limitations of coverage in an insurance policy, the Supreme Court has repeatedly cautioned, "[T]o be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be 'conspicuous, plain and clear.' [Citation.] Thus, any such limitation must be placed and printed so that it will attract the reader's attention." (*Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198, 1204 [13 Cal.Rptr.3d 68, 89 P.3d 381]; cf. *Starbucks Corp. v. Superior Court* (2008) 168 Cal.App.4th 1436, 1444 [86 Cal.Rptr.3d 482] ["We see no problem with the language of the California disclaimer, but we see significant problems with its placement."].)

To say the very least, the placement and format of the disclaimer language at issue in this case are not "conspicuous" as that term is used in related contexts. (See, e.g., Cal. U. Com. Code, § 1201, subd. (b)(10) [" 'Conspicuous,' with reference to a term, means so written, displayed, or presented that a reasonable person against whom it is to operate ought to have noticed it. . . . Conspicuous terms include the following: [¶] (A) a heading in capitals . . . and [¶] (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols

or other marks that call attention to the language."].) In short, this issue is not one that can be decided as a matter of law on demurrer.[2]

### c. *The policy's "for life" language did not trigger notice or preclude reasonable reliance as a matter of law*

Guardian Life also attempts to support the trial court's conclusion that Powell was on inquiry notice in 1994 and could not reasonably rely on any promise or representation regarding a "vanishing premium" by referring to the policy term that premiums would be payable "for life."[3] However, Powell does not allege he was told *premiums* would stop, rather that premiums after the 11th year would be paid from earnings from the policy and that no further out-of-pocket *payments* would be required. Accordingly, even though Powell may be charged with knowledge of the terms of the policy he received, nothing in the policy itself was inconsistent with the misrepresentations on which the lawsuit is based. (See *Paper Savers, Inc. v. Nacsa* (1996) 51 Cal.App.4th 1090, 1102 [59 Cal.Rptr.2d 547] ["The instant case has nothing to do with the interpretation of insurance policy terms. No one is disputing the policy terms or their meaning. The dispute is whether [the insurer's agent] actively misled [the insured's representative] as to the effect of those terms."].)

### 3. *The Trial Court Properly Sustained Guardian Life's Demurrer to Powell's CLRA Claim*

The CLRA is a pro-consumer statute that prohibits specific deceptive or unfair acts in any "transaction intended to result or which results in the

---

[2] In light of our conclusion the disclaimer language, without more, is not adequate to trigger notice or preclude reliance as a matter of law, we need not consider the trial court's additional determination Guardian Life's purported "pegging" and "substitution" scheme, as alleged in the amended complaint, did not delay the running of the statute of limitations on Powell's claims or constitute an independent actionable fraud.

[3] Counsel for Davidson at oral argument noted the Guardian Life policy asserts the company "will not be bound by any promise or statement made by any agent . . . ." However, a party to an agreement induced by fraudulent misrepresentations or nondisclosures is entitled to rescind, notwithstanding the existence of purported exculpatory provisions contained in the agreement. (*City of Salinas v. Souza & McCue Construction Co.* (1967) 66 Cal.2d 217, 223–224 [57 Cal.Rptr. 337, 424 P.2d 921], disapproved on another ground in *Helfend v. Southern California Rapid Transit Dist.* (1970) 2 Cal.3d 1, 15 [84 Cal.Rptr. 173, 465 P.2d 61]; accord, *Danzig v. Jack Grynberg & Associates* (1984) 161 Cal.App.3d 1128, 1138 [208 Cal.Rptr. 336] [" 'A party to a contract who has been guilty of fraud in its inducement cannot absolve himself from the effects of his fraud by any stipulation in the contract, either that no representations have been made, or that any right which might be grounded upon them is waived. Such a stipulation or waiver will be ignored, and parol evidence of misrepresentations will be admitted, for the reason that fraud renders the whole agreement voidable, including the waiver provision.' "]; *Guido v. Koopman* (1991) 1 Cal.App.4th 837, 843 [2 Cal.Rptr.2d 437] [same].)

sale or lease of goods or services to any consumer." (Civ. Code, § 1770, subd. (a).) Without question, the CLRA proscribes at least several practices that Powell has alleged occurred in connection with the sale of the vanishing premium policy at issue in this case. For example, the CLRA prohibits "[r]epresenting that goods or services have . . . characteristics . . . benefits, or quantities which they do not have" (Civ. Code, § 1770, subd. (a)(5)), or "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Civ. Code, § 1770, subd. (a)(7)). The CLRA allows for restitution- ary and injunctive relief, as well as compensatory and punitive damages and attorney fees. (Civ. Code, § 1780, subds. (a)(1)–(5), (d).)[4]

The issue whether insurance is a "good" or "service" subject to the CLRA is currently pending in the Supreme Court. (*Fairbanks v. Superior Court*, review granted Nov. 14, 2007, S157001.)[5] More than 30 years ago, however, in *Civil Service Employees Ins. Co. v. Superior Court, supra*, 22 Cal.3d 362, the court clearly indicated its view that insurance was outside the scope of the statute. In that case the Supreme Court, considering a class action against an insurer, held a trial court has the authority to order a defendant to bear the costs of notifying absent class members, concluding the CLRA's class action procedures should be utilized in all class actions. In dicta the court com- mented that insurance is neither a good nor a service under the CLRA: "Although [Civil Code] section 1781, subdivision (d) does not directly apply to the present case because insurance is technically neither a 'good' nor a 'service' within the meaning of the [CLRA], we expressly held [in an earlier case] that the class action procedures prescribed by the Consumer Legal Remedies Act could and should appropriately be utilized by trial courts in all class actions." (*Civil Service Employees Ins. Co.*, at p. 376.)

■ The plain language of the CLRA supports the Supreme Court's observation. "Goods" are defined in the CLRA as tangible chattels bought or leased for personal, family or household use. (Civ. Code, § 1761, subd. (a).) Insurance is not a tangible item. "Services" are defined as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." (Civ. Code, § 1761, subd. (b).) "Insurance", in contrast, is defined by the Insurance Code as "a

---

[4] An award of attorney fees to the successful plaintiff appears to be the primary additional relief available for prevailing on a claim under the CLRA, as well as on claims for fraud or negligent misrepresentation and unfair competition. (See *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1086 [90 Cal.Rptr.2d 334, 988 P.2d 67] ["the availability of costs and attorneys fees to prevailing plaintiffs is integral to making the CLRA an effective piece of consumer legislation, increasing the financial feasibility of bringing suits under the statute"].)

[5] Briefing in *Fairbanks* has been completed, and the case has been scheduled for oral argument on March 4, 2009■

contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." (Ins. Code, § 22.) Obviously, insurance contracts are not work or labor. Nor can these indemnification agreements easily be described as personal services or services "furnished in connection with the sale or repair of goods." They are simply agreements to pay if and when an identifiable event occurs. (Cf. *Berry v. American Express Publishing, Inc.* (2007) 147 Cal.App.4th 224, 229–230 [54 Cal.Rptr.3d 91] [issuance of credit card is not a "service" under the CLRA].)[6]

Particularly in view of these statutory definitions, until directed otherwise by the Supreme Court, we, like the trial court, will adhere to the Supreme Court's dicta in *Civil Service Employees Ins. Co. v. Superior Court, supra,* 22 Cal.3d at page 367 that insurance is not a "good" or "service" subject to the CLRA. (See generally *People v. Trice* (1977) 75 Cal.App.3d 984, 986–987 [143 Cal.Rptr. 730] (opn. of Kaus, P. J.) ["Whether the Supreme Court's obvious awareness of the consequences of its statement elevates the dictum to a holding or whether it is a dictum that we must follow, does not make much difference. We follow."].)

## DISPOSITION

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion. Powell is to recover his costs on appeal.

Zelon, J., concurred.

**WOODS, J.,** Dissenting.—The majority determination that the trial court properly sustained the demurrer to David C. Powell's CLRA (Consumers Legal Remedies Act; Civ. Code, § 1750 et seq.) claim, in light of California Supreme Court precedent *Civil Service Employees Ins. Co. v. Superior Court* (1978) 22 Cal.3d 362, 376 [149 Cal.Rptr. 360, 584 P.2d 497], is correct in my view. I concur in the analysis.

Nonetheless, I respectfully disagree with the majority's conclusion that the trial court erred in sustaining the demurrer to the other causes of action. As I shall explain, in my view the trial court correctly concluded Powell's claims

---

[6] In *Massachusetts Mutual Life Ins. Co. v. Superior Court, supra,* 97 Cal.App.4th 1282 neither party raised the issue whether insurance is a "good" or a "service" under the CLRA; and the appellate court did not consider the question, addressing only whether the trial court had erred in finding the requirements for class certification had been met. (*Massachusetts Mutual,* at p. 1295.) Similarly, in *Kagan v. Gibraltar Sav. & Loan Assn.* (1984) 35 Cal.3d 582 [200 Cal.Rptr.38, 676 P.2d 1060], in which the court held a consumer who had settled with the defendant could still represent a class of injured plaintiffs in a class action suit for violations of the CLRA involving individual retirement accounts (IRA's), the court did not address the merits of the plaintiff's action, including whether the financial product involved was in fact a "good" or "service" under the CLRA. (See *Kagan,* at p. 587.)

were barred by the statutes of limitation because the disclaimers in the illustration and the policy language were sufficient, as a matter of law, to give Powell actual, if not at least inquiry, notice that the cash values were not "guaranteed" as of August 1993 and that the complaint failed to establish the element of justifiable reliance.

Preliminarily, however, I note my agreement with the opinion's analysis on a number of other points. First, I agree with the description of when the various statutes of limitation begin to run and of the delayed discovery rule's application to the claims. Second, I also concur that in general the question of when a plaintiff reasonably should have discovered the facts for the purposes of accrual of an action or the discovery rule is a question of fact that may be resolved as a matter of law when the undisputed evidence can support only one reasonable conclusion. Third, the majority is correct in stating that sufficiency of a disclaimer in a fraud claim must be assessed in light of the plaintiff's knowledge and experience. Where my view departs from that expressed in the majority opinion, however, is in the application of these principles. Because the material facts are undisputed and, as I shall explain, can support but one reasonable conclusion in this case, the application of the statute of limitations can be decided as a matter of law on a demurrer, and was decided properly by the trial court.

### A. *Language in the Illustration and Policy Triggered the Statutes of Limitation.*

The determination of Powell's reasonableness in relying on Guardian Life's policy illustration and the agent's alleged promise that out-of-pocket premiums would not be required after the 11th year of the policy turns upon the disclaimers contained in the policy and the illustration. More specifically, it depends on whether those disclaimers were legally adequate, that is, whether the disclaimers were sufficiently conspicuous and whether they were clear. In my view there is no question that the disclaimers were obvious and unambiguous.

First as to the issue of placement, the disclaimers must be viewed in context. The first page of the policy advised in bold type: *"Read this policy carefully."* (Italics added.) The second page of the three-page illustration clearly stated *"please see attached sheets with important footnotes."* (Italics added.) This would have led the reader to the third page of the illustration which stated, beginning at the 12th line of text, *"Figures depending on dividends are neither estimated nor guaranteed, but are based on the 1993 dividend scale. [¶] Actual future dividends may be higher or lower than those illustrated depending on the company's actual future experience. [¶] . . . [¶] The number of years of required cash outlays depends upon age at issue,*

*policy class, face amount, and continuation of Guardian's current dividend scale, and assumes no policy loans. . . . This is not a paid-up policy; premiums are due and payable in all policy years."* (Italics added.) These disclaimers are formatted in capitalized letters in what appears to be standard 12-point Courier font.[1] While these disclaimers could have been printed in a larger size font, the fact that they were not does not change my view of their manifest sufficiency, especially in view of the fact that the entire illustration is only three pages and Powell was instructed both by the policy and in the illustration to read the documents with care. A reasonable person would have followed these instructions, and having done so would have seen these disclaimers. Thus, the disclaimers were conspicuous enough to apprise a reasonable person of the terms.

Second, the language of the disclaimers is unambiguous. The disclaimers are written in plain English; they do not use technical financial or legal language. They do not contain terms of art unique to insurance policies. Read in context with the term "vanishing premium" on the first page of the illustration, a reasonable person would understand that any representation that all out-of-pocket premiums would "vanish" after 11 years was not unconditional or guaranteed. At a minimum this language would have given a reasonable person cause to at least suspect that the alleged representations concerning vanishing obligations to pay premiums out of pocket after the 11th policy year might be wrong. (See *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807 [27 Cal.Rptr.3d 661, 110 P.3d 914] [A plaintiff has reason to discover a cause of action when he or she " 'has reason at least to suspect a factual basis for its elements.' " Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them].) Accordingly, the disclaimer in the illustration was sufficient to give Powell reason to inquire as to whether out-of-pocket premiums might be required past the originally projected vanishing date. (See, e.g., *In re Jackson Nat. Life Ins. Co. Premium Litigat.* (W.D.Mich. 2000) 107 F.Supp.2d 841, 852–853 [applying California law, federal district court concluded that language in insurance policy which indicated that the exercise of the vanishing option was conditioned on a sufficiency of cash value accumulation, rather than guaranteed, was sufficient to put plaintiff on inquiry notice to investigate whether the nature of his policy and his future premium obligations had been misrepresented at point of sale].)

---

[1] The footnote on page 3 of the illustration contains a number of other lines of text in addition to the disclaimers at issue here. Nonetheless, all of the clauses in the footnotes should have drawn the attention of a reasonable person, as those provisions include a number of conditions and limitations placed on the policy.

In addition, an examination of the conspicuous and unambiguous language of the policy also supports my conclusion. The first page of the policy states that *"premiums are payable during the insured's lifetime"* and that dividends are payable *"if earned."* (Italics added.) The conditional *"if"* language is significant here. Powell alleged that he was led to believe he would not have to pay out-of-pocket premiums after the 11th policy year because those future premiums would be paid out of the dividends earned on the policy. This alleged representation suggests that dividends were not conditioned on anything—that it was not a question of "if" dividends would be earned, but only a matter of when they would be earned in a sufficient amount to pay the premiums. However, this conditional language in the policy implies that earnings were not guaranteed and this implication is at odds with what Powell claims he was told about the policy and at odds with his interpretation of the first page of the policy illustration. In my view, this language on the first page of the policy would have apprised a reasonable person that the out-of-pocket obligation to pay premiums *might not* vanish and at the very least would raise a question as to the accuracy of the alleged representations and illustration that suggested otherwise.

Finally, not to be overlooked in this analysis is the fact appellant David C. Powell is a college-educated professional and thus, presumably not an unsophisticated person. His application discloses that he is a dentist engaged in his own practice. Given his background and apparent intelligence, it would have been manifestly unreasonable for him not to read the policy and the entire illustration and having done so, he would have been alerted to the disclaimers.

## B. *As a Matter of Law, Powell Cannot Show Justifiable Reliance.*

Notwithstanding my conclusion that the statutes of limitation barred Powell's claims, Powell's causes of action also fail for a separate and independent reason, namely, that as a matter of law, Powell cannot show justifiable reliance.

To show injury caused by a defendant's misrepresentation, common law principles require that a plaintiff establish the element of reliance. (*Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1088, 1092 [23 Cal.Rptr.2d 101, 858 P.2d 568].) Reliance exists when " 'the representation has played a substantial part, and so has been a substantial factor, in influencing [the plaintiff's] decision.' " (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 977 [64 Cal.Rptr.2d 843, 938 P.2d 903].) Reliance also incorporates the concept of a material misrepresentation that underlies actionable fraud; i.e., " ' "A misrepresentation of fact is material if it induced the plaintiff to alter his position to his detriment. [Citation.] Stated in terms of reliance, materiality means that without the misrepresentation, the plaintiff would not have

acted as he did." ' " (*Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 668 [22 Cal.Rptr.2d 419].)

It must appear, however, not only that the plaintiff acted in reliance on the misrepresentation but also the plaintiff was justified in doing so. (*Blankenheim v. E. F. Hutton & Co.* (1990) 217 Cal.App.3d 1463, 1474 [266 Cal.Rptr. 593]; *Hadland v. NN Investors Life Ins. Co.* (1994) 24 Cal.App.4th 1578, 1586 [30 Cal.Rptr.2d 88] [fraud requires proof of false representation and plaintiff's reasonable reliance].) Moreover, under California law, whether reliance was reasonable is a question of fact for the jury, and may be decided as a matter of law only if the facts permit reasonable minds to come to just one conclusion. (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1666 [26 Cal.Rptr.3d 638].)

Generally, the reliance, causation, and injury components of a common law misrepresentation claim have been implicitly incorporated into the statutes affording remedies for misrepresentations to consumers. Here, as explained elsewhere, the conspicuous and express terms of the disclaimers in the illustration and the language of the policy attached to the complaint, which form the basis for Powell's complaint, clearly convey that the "[f]igures depending on dividends are neither estimated nor guaranteed," and depend on the "company's actual future experience." Thus, these express terms defeat Powell's claim that his reliance on the alleged misrepresentations by Guardian Life and the agent was justified. No reasonable consumer could have, being aware of this language in the policy and illustration, justifiably relied on any purported representations or promises that Powell's policy would be guaranteed to be paid for life after the 11th year of policy payments.

I also conclude, based on the clear language of the policy and the illustration, that Powell's UCL (unfair competition law) claim would fail as a matter of law because the conduct alleged would not likely deceive consumers. (*Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1288–1289 [119 Cal.Rptr.2d 190] [concluding a claim under the UCL (nonclass action) does not require a showing of individual reliance or that the plaintiff was deceived, nonetheless recognizing that a UCL claim requires a showing that a defendant's conduct was likely to deceive consumers].)

In view of all of the foregoing, I conclude the court did not err in sustaining the demurrer without granting leave to amend, and accordingly would affirm the judgment.

A petition for a rehearing was denied March 19, 2009, and the petition of respondent John A. Davidson for review by the Supreme Court was denied May 20, 2009, S171912. George, C. J., did not participate therein.