Filed 3/27/23  Estate of Jenkins CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| Estate of JAMES R. JENKINS, Deceased. | B312428 |
| LILY GRIEGO et al., | (Los Angeles County Super. Ct. No. 18STPB10198) |
| Petitioners and Appellants, | |
| v. | |
| ALAN R. PENUELA, as Administrador etc., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Brenda Penny, Judge. Reversed with directions.

Oldman, Cooley, Sallus, Birnberg, Coleman & Gold, Mary-Felicia Apanius and Marc L. Sallus for Petitioners and Appellants.

Law Office of John Derrick and John Derrick for Defendants and Respondents.

Lily and Victor Griego alleged in a Probate Code section 850 petition that decedent James Jenkins, their real estate agent, fraudulently caused them to sign a grant deed purporting to transfer to himself and others partial ownership of real property the Griegos had purchased.[1]  The probate court sustained a demurrer to the petition without leave to amend on statute of limitation grounds and ordered dismissal of their petition.  We reverse.

### FACTS

In 1973, Lily Griego met Jenkins, and they became lifelong friends.[2]  He represented her in various transactions as a real estate agent and broker.  In 1978, Jenkins represented Lily and her previous husband in the purchase of a house in La Puente.  In 1986, Jenkins and Lily together purchased a house in West Covina that they renovated and sold.  Lily considered Jenkins part of her family and trusted him implicitly.

1. ***The Torch Street Property Purchase***

In 1993, Jenkins represented the Griegos in their purchase of an 18-unit apartment building located on Torch Street in

---

[1]     Among other things, Probate Code section 850 authorizes, "any interested person" to petition the probate court for an order "[w]here the decedent died in possession of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another . . . ."  (Prob. Code, § 850, subd. (a)(2)(C).)

[2]     Because several of the parties and other interested persons share the same last name, we will from time to time use first names.  We intend no disrespect.

Baldwin Park. The sellers transferred title to the Griegos by a grant deed recorded on December 23, 1993.[3]

Jenkins died in 2018. In February 2019, Alan Penuela was appointed administrator of Jenkins's estate. On September 24, 2019, more than one year after Jenkins's death, Alan recorded a grant deed dated April 21, 1994, bearing the Griegos' signatures that purported to transfer ownership of the Torch Street property as follows: 62.50 percent to the Griegos, 12.50 percent to Norma and David Dreger, 12.50 percent to respondents Alan Penuela and Joan Penuela, and 12.50 percent to real estate agent Jenkins.

The 1994 grant deed was notarized by Jenkins's friend, Eira Vazquez. Of the grantees, Norma and David Dreger are Lily's sister and brother-in-law. Alan and Joan Penuela were friends of decedent Jenkins. The Griegos denied having any personal or business relationship with the Penuelas. This 1994 grant deed was not recorded for 25 years. Alan's attorney sent the Griegos a letter in September 2019 regarding the 1994 grant deed.

## 2.    *The Section 850 Petition*

On November 13, 2019, less than two months after the 1994 grant deed was recorded by Alan Penuela, the Griegos filed a petition for transfer and return of the Torch Street property pursuant to Probate Code section 850. The claim named Alan, as

---

[3]    In 1999, the Griegos transferred their interest in the Torch Street property to their newly created trust, entitled the VICTOR R. GRIEGO, Jr. or LILY D. GRIEGO, Trustees for the GRIEGO FAMILY TRUST, Dated: September 28, 1999. The Griegos filed their petition as individuals and as trustees on behalf of the trust. When we refer to the Griegos, we include the trust.

an individual and in his capacity as administrator of Jenkins's estate, his wife Joan, and the Dregers.[4]

In their Probate Code petition, the Griegos alleged causes of action for fraud, cancellation of written instrument, quiet title, and breach of fiduciary duty. They also sought punitive damages. Specifically, they charged that in 1993, in connection with the Torch Street purchase, Jenkins placed before them numerous documents for Lily and Victor to sign. He did not bring the 1994 grant deed to their attention. Instead, the Griegos believed the 1994 grant deed must have been "hidden" among the other purchase documents they signed in 1993 and, other than their signatures, was a blank document later filled out by Jenkins without their consent. Jenkins "flipped through the documents, folding the pages and pointed to where [the Griegos] had to sign without reading any of the documents. This was normal for them to do since as stated before Lily trusted James wholeheartedly and this was not the first purchase Lily had handled this way with James." The Griegos recalled they signed a notarial journal that they believed belonged to Jenkins and denied ever appearing

---

[4] From time to time, we refer to the Penuelas as "respondents."

The Griegos alleged the Dregers, the Griegos' relatives, claim no interest in the property aside from a 12.5 percent share of the rent proceeds, pursuant to a separate agreement which we discuss below. They also alleged that the Dregers are willing to stipulate to the cancellation of the 1994 grant deed. The Dregers, although named as respondents in Griegos' petition, have neither filed a brief in this appeal nor otherwise appeared. Whether the Dregers continue to hold a 12.5 percent share of the Torch Street property under the 1994 grant deed is not before us.

before Eira Vazquez, the notary public whose name appears on the 1994 grant deed.

The petition also described a "deal" Lily made with Jenkins and the Dregers that allowed the three of them to invest in the Torch Street property in exchange for lifetime rental receipts. Jenkins applied the commission he had earned on the purchase of the Torch Street property to receive a 25 percent share of the rents. The Dregers invested $12,500 to receive a 12.5 percent share. Based on this agreement, when the property turned a profit four years after the purchase, the Griegos began to pay the applicable percentage of rent proceeds to Jenkins and the Dregers. The payments were made over a period of 20 years until Jenkins's death. It is unclear from the petition whether the Griegos continued to pay the Dregers after Jenkins's death. According to the petition, the Penuelas did not invest in the property, and were never paid any of the rental proceeds.

The Griegos denied they had any intention to sign what respondents claim is the 1994 grant deed. They alleged they were not aware of the 1994 deed until their attorney received a letter from Alan Penuelas's attorney in 2019.

3. *The Demurrer and Motion to Strike*

Respondents moved to strike the request for punitive damages and portions of the first amended petition that dealt with an unrelated real estate transaction. Respondents also demurred to the first amended petition, arguing it was barred by two statutes of limitations and it failed to state a cause of action for fraud. They argued the four causes of action in the amended petition arose out of the alleged fraud in the execution of the 1994 grant deed. The Griegos' petition, filed some 25 years after they signed the 1994 grant deed, fell outside the three-year limitations

5

period for fraud under Code of Civil Procedure section 338, subdivision (d) (section 338(d)). According to respondents, the Griegos could not benefit from the discovery rule because they had the opportunity to read the documents that were presented to them and should have discovered they were signing a deed merely by looking at it.

Respondents also argued that even if the three-year statute of limitations for fraud was tolled and the Griegos' causes of action survived Jenkins's death under section 338(d), the petition still failed — the statute of limitations for filing a claim against a decedent is one year from date of death and is not tolled or extended for any purpose. (Code Civ. Proc., § 366.2 (section 366.2).) Respondents argued that because the claim was filed more than one year after Jenkins's death, section 366.2 served as a second bar to the Griegos' claims.

In three minute orders all dated February 3, 2021, the probate court sustained the demurrer without leave to amend, denied the petition with prejudice, and granted the motion to strike.[5] The court ordered respondents' counsel to prepare an order after hearing for each ruling. On April 2, 2021, the Griegos

---

[5] Although the Griegos purport to appeal from all three minute orders, they urge this court to reverse only the order sustaining the demurrer and do not discuss the other orders. At this stage of the proceedings, the order dismissing the petition rises and falls with the order sustaining the demurrer. The Griegos have abandoned on appeal any arguments of error related to the order on the motion to strike.

filed a notice of appeal although no final judgment or order of dismissal had been filed.[6]

### *DISCUSSION*

On appeal, the Griegos contend the probate court erred when it sustained the demurrer. They primarily address the probate court's ruling that the statute of limitations under section 366.2 barred their petition but also assert their claims are not barred by the statute of limitations of section 338(d). They further contend their fraud claim, upon which their remaining

---

[6]     In a letter dated June 16, 2021, this court alerted the Griegos to the missing final judgment or appealable order and warned that their appeal was subject to dismissal. The parties urged us to treat the three unsigned February 3 minute orders as an appealable order. We declined to do so and on December 8, 2022, ordered the parties to submit an order complying with Code of Civil Procedure section 581d. They did so on January 13, 2023, when they jointly submitted three documents: (1) Order After Hearing Sustaining Demurrer Without Leave to Amend; (2) Order After Hearing Granting Motion to Strike Portions of the First Amended Petition; and (3) Order Denying First Amended Petition With Prejudice After Sustaining Demurrer Without Leave to Amend. All three orders were signed by the trial judge on January 5, 2023, and filed in the superior court on January 6, 2023. We grant the parties' stipulated request to augment the record with these orders. Thus augmented, the record now contains an appealable final order of dismissal in the form of the order denying the first amended petition with prejudice. (Code Civ. Proc., §§ 581d, 904.1; *City of Los Angeles v. City of Los Angeles Employee Relations Bd.* (2016) 7 Cal.App.5th 150, 157.) We exercise our discretion to treat the Griegos' appeal as from the appealable January 13, 2023, final order of dismissal. (*Hood v. Hacienda La Puente Unified Sch. Dist.* (1998) 65 Cal.App.4th 435, 437, fn. 1.)

7

claims for cancellation of instrument, quiet title, and breach of fiduciary duty are based, was properly alleged.

Respondents counter that the Griegos have forfeited their section 338(d) argument and that the argument lacks merit in any case. They assert section 366.2 serves as a second bar against the Griegos' claims and that the Griegos have failed to state causes of action for cancellation of an instrument and fraud.[7] We begin by addressing the forfeiture issue.

**1.    *Forfeiture***

Respondents contend the Griegos have forfeited any argument regarding the three year/discovery statute of limitations of section 338(d) because the Griegos do not address it in the argument section of their opening brief.

In sustaining the demurrer, the probate court specified its ruling was based on section 366.2 but did not expressly mention section 338(d), even when discussing the discovery rule. In challenging the probate court's ruling, the Griegos focus their opening brief on section 366.2 in keeping with the court's ruling. On appeal, respondents continue to assert both statutes bar the Griegos' claims.

We decline to find forfeiture. The parties fully briefed the application of section 338(d) and the discovery rule in the probate court, those arguments were recounted in detail in the Griegos' opening brief even if "section 338(d)" infrequently appears, respondents address section 338(d) and the discovery rule extensively in their appellate brief, and the reply brief addresses the issue. Respondents do not claim they were prejudiced by lack

---

[7]    Respondents make no arguments regarding the sufficiency of the Griegos' allegations of quiet title and breach of fiduciary duty.

of notice. (*Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1121–1122.) A more express statement in the opening brief that the Griegos were arguing against the application of both statutes of limitations would have avoided the forfeiture point altogether. Nevertheless, under the circumstances, we conclude the Griegos have not forfeited their argument that the discovery rule tolls the section 338(d) statute of limitations.[8] (See *Chapman v. Enos* (2004) 116 Cal.App.4th 920, 927 [no forfeiture in close case]; *People v. Tate* (2010) 49 Cal.4th 635, 677 fn. 23 [where the question of forfeiture of an issue is close and difficult, "we proceed on the assumption that no forfeiture occurred"].)

## 2. *Standard of Review*

"A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. [Citations.] We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. [Citations.] We liberally construe the pleading with a view to substantial justice between

---

[8] The Griegos also raise, to varying degrees of thoroughness, the doctrines of equitable tolling, extrinsic fraud, equitable estoppel, and delayed accrual in connection with their discussion of section 366.2. Although some of these doctrines may also apply to section 338(d), only the discovery rule is well developed in the Griegos' briefing in the probate court and on appeal. We therefore do not address these doctrines relative to section 338(d). We consider the application of some of those doctrines to section 366.2 below.

the parties (Code Civ. Proc., § 452; *Gilkyson v. Disney Enterprises, Inc.* (2016) 244 Cal.App.4th 1336, 1340; see *Schifando* [*v. City of Los Angeles* (2003) 31 Cal.4th 1074,] 1081 [complaint must be read in context and given a reasonable interpretation]); but, '[u]nder the doctrine of truthful pleading, the courts "will not close their eyes to situations where a complaint contains allegations of fact inconsistent with attached documents, or allegations contrary to facts which are judicially noticed." ' " (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 725–726.)

We next turn to the merits of the statute of limitations arguments, first under section 338(d) and then under section 366.2.

**3.** ***Section 338(d) – The Three Years/Delayed Discovery Statute of Limitations for Fraud***

Respondents assert the statute of limitations under section 338(d) began to run, at the latest, by April 21, 1994, the date of the 1994 grant deed. Under section 338(d), the Griegos were, thus, required to file their petition by April 21, 1997, subject to any delayed discovery argument. By respondents' calculation, the November 13, 2019 petition was filed over two decades too late.

The Griegos contend they immediately filed their petition upon discovery of Jenkins's fraud when they received the letter from Alan's attorney in 2019. According to the Griegos, the discovery rule delayed accrual of their causes of action until sometime in 2019 and the filing of the petition on November 13th

10

of that year was timely.[9]  As we explain, we conclude the Griegos adequately alleged delayed discovery of their claims such that section 338(d) does not bar their petition on demurrer.

    a.    *The Discovery Rule*

Section 338(d) provides for a three-year limitations period for "[a]n action for relief on the ground of fraud or mistake.  The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."  The section 338(d) discovery rule has been interpreted to mean "the discovery by the aggrieved party of the fraud or facts that would lead a reasonably prudent person to suspect fraud."  (*Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 875.)

In general, the "discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action.  The discovery rule does not encourage dilatory tactics because plaintiffs are charged with presumptive knowledge of an injury if they have ' " 'information of circumstances to put [them] *on inquiry' " '* or if they have ' " '*the opportunity to obtain knowledge*

---

[9]    The Griegos' four causes of action for fraud, breach of a fiduciary duty, quiet title, and cancellation of a written instrument are premised on Jenkins's fraudulent conduct.  Each is subject to the discovery rule. (*April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 827, 828 fn. 11 (*April Enterprises*) ["It is well-settled that the discovery rule applies to causes of action involving the breach of a fiduciary relationship"]; *Welsher v. Glickman* (1969) 272 Cal.App.2d 134, 140 [action to quiet title based on fraud]; *Zakaessian v. Zakaessian* (1945) 70 Cal.App.2d 721, 725 [where the gravamen of the cause of action to cancel an instrument involves fraud or mistake, section 338(d) is the applicable statute of limitations].)

11

from sources open to [their] investigation.' " ' [Citations.]  In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." (*Fox v. Ethicon Endo–Surgery, Inc.* (2005) 35 Cal.4th 797, 807–808 (*Fox*).)

"In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.' [Citation.]  In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.' " (*Fox, supra,* 35 Cal.4th at p. 809, fn. 3.)

The duty to inquire is different when the claim is against a fiduciary.  " 'Where a fiduciary obligation is present, the courts have recognized a postponement of the accrual of the cause of action until the beneficiary has knowledge or notice of the act constituting a breach of fidelity.  [Citations.]  The existence of a trust relationship limits the *duty of inquiry*.  "Thus, when a potential plaintiff is in a fiduciary relationship with another individual, that plaintiff's burden of discovery is reduced and he is entitled to rely on the statements and advice provided by the fiduciary." ' " (*WA Southwest 2, LLC v. First American Title Ins. Co.* (2015) 240 Cal.App.4th 148, 157 [emphasis added] (*WA Southwest 2, LLC*).)

Postponement of the limitations period until discovery "prevents the fiduciary from obtaining immunity for an initial

12

breach of duty by a subsequent breach of the obligation of disclosure." (*Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 189 (*Neel v. Magana*).)

  b. *The Griegos Adequately Alleged the Time and Manner of Discovery*

Here, the Griegos allege they discovered Jenkins's fraud in 2019 when Alan's attorney alerted them to the existence of the 1994 grant deed. Respondents counter that the Griegos failed to adequately allege the time of discovery because the Griegos fail to specify when they received the letter from Alan's attorney. We conclude the first amended petition adequately alleges the time and manner of discovery.

The first amended petition can reasonably be read to state that the Griegos were unaware of the 1994 grant deed until 2019, the year when Alan was appointed administrator to Jenkins's estate and when the 1994 grant deed was recorded. The Griegos specifically allege Lily and Victor were not aware of that deed for 25 years – the math leads to the conclusion that, according to the petition, the letter from Alan's attorney was received, at the earliest, in 2019 (1994 + 25).

  c. *The Griegos Adequately Alleged Their Inability to Have Discovered the Fraud Earlier*

The Griegos alleged Jenkins withheld the 1994 grant deed from them from the time they signed the deed in 1993 until his death in 2018. They further alleged that Jenkins's concealment of the deed for 25 years was "without the knowledge of Lily and Victor." These allegations are sufficient to demonstrate the Griegos' inability to have made an earlier discovery.

Respondents ignore Jenkins' failure to disclose the existence of the 1994 grant deed to the Griegos. They instead

13

rely on the Griegos' admitted failure to read the documents to argue the Griegos' own negligence prevented them from discovering the fraud earlier. In support of this theory, respondents cite to *Edgar Rice Burroughs, Inc. v. Commodore Productions & Artists, Inc.* (1959) 167 Cal.App.2d 463, 475 (*Edgar Rice*) to assert the Griegos had a means to discover Jenkins's fraud earlier simply by reading what they signed. But *Edgar Rice* did not involve the failure to read a contract or a fiduciary relationship. There, a party to a contract complained he overpaid for the right to broadcast a radio show. The court found the complaining party was on inquiry notice of his claim because he, at all times, was in possession of the books and records that would have revealed the overpayment. (*Edgar Rice, supra,* 167 Cal.App.2d at p. 476.) As we have explained, there is no duty to inquire under the facts of this case. (*See WA Southwest 2, LLC, supra,* 240 Cal.App.4th at p. 157; *Neel v. Magana, supra,* 6 Cal.3d at p. 189.)

Here, the Griegos allege they had no knowledge of the 1994 grant deed, much less control or possession of it. They claim Jenkins gave them a blank document to sign and only filled it out later. Based on the allegations in the petition, the Griegos were justified in relying on Jenkins because they held Jenkins in a position of trust. Leaving aside the claimed outright fraud in the execution of the blank document, Jenkins owed the Griegos a fiduciary duty to disclose the terms of the 1994 grant deed, particularly his own interest in the property, when he filled in those terms. "The law imposes on a real estate agent 'the same obligation of undivided service and loyalty that it imposes on a trustee in favor of his beneficiary.' [Citations.] This relationship not only imposes upon him the duty of acting in the highest good

14

faith towards his principal but precludes the agent from obtaining any advantage over the principal in any transaction had by virtue of his agency. [Citation.] 'Such an agent is charged with the duty of fullest disclosure of all material facts concerning the transaction that might affect the principal's decision. [Citations.]' " (*Batson v. Strehlow* (1968) 68 Cal.2d 662, 674–675; *Neel v. Magana, supra,* 6 Cal.3d at pp. 188–189 ["The duty of a fiduciary embraces the obligation to render a full and fair disclosure to the beneficiary of all facts which materially affect his rights and interests"].)

As our late colleague, Justice Walter Croskey, wrote in *Brown v. Wells Fargo Bank, N.A.* (2008) 168 Cal.App.4th 938, (*Brown*): "If the defendant is in a fiduciary relationship with the plaintiff which requires the defendant to explain the terms of a contract between them, the plaintiff's failure to read the contract would be reasonable. In such a situation, the defendant fiduciary's failure to perform its duty would constitute constructive fraud, the plaintiff's failure to read the contract would be justifiable, and constructive fraud in the execution would be established." (*Id.* at p. 959 [citations omitted]; accord *Ashburn v. AIG Financial Advisors, Inc.* (2015) 234 Cal.App.4th 79, 102.)

Courts have regularly applied the discovery rule where a fiduciary has fraudulently concealed material facts giving rise to the cause of action. (See generally 3 Witkin, Cal. Procedure (6th ed. 2022) Actions, § 718 [citing cases].)

In *April Enterprises, supra,* 147 Cal.App.3d at page 827, the parties were joint venturers with fiduciary obligations to each other. One accused the other of wrongful destruction of certain video tapes. The court held the statute of limitations did not run

15

when the destruction occurred but only upon discovery of it. The court reasoned, "Such a relationship compels a rule of delayed accrual to avoid barring a victim of wrongful conduct from asserting a cause of action before he could reasonably be expected to discover its existence. Moreover, the wrongful act in the instant case consisted of destruction of the videotapes while they were in respondents' exclusive custody and control. Under these circumstances respondents cannot, in fairness, expect the statute of limitations to begin running the moment the clandestine act was completed." (*Ibid.*; see also *Lee v. Escrow Consultants* (1989) 210 Cal.App.3d 915, 921 [court held the plaintiff to a "relaxed" duty of inquiry due to his fiduciary relationship with the defendant escrow company]; *Parsons v. Tickner* (1995) 31 Cal.App.4th 1513, 1529.)

Here, the Griegos were also entitled to assume Jenkins would fulfill his fiduciary duty to them and disclose "all facts which materially affect [their] rights and interests." (*Neel v. Magana, supra,* 6 Cal.3d at pp. 188–189.) As in *April Enterprises,* the wrongful acts alleged in this case involve clandestine conduct: hiding a blank grant deed in a stack of documents, later filling out the grant deed outside the Griegos' presence, concealing from them the existence of the executed deed, and keeping the deed in Jenkins's exclusive custody and control for over 25 years. Under these circumstances, respondents cannot in fairness expect the statute of limitations to begin running on April 21, 1994, when the grant deed was allegedly secretly filled out to transfer partial ownership of the property to Jenkins and others.

We find distinguishable the case on which respondents rely, *Alfaro v. Community Housing Improvement System &*

16

*Planning Assn.* (2009) 171 Cal.App.4th 1356, 1395. Respondents point to that opinion's use of the poetic maxim: "A person in a fiduciary relationship may relax, but not fall asleep." In *Alfaro,* the plaintiffs were purchasers of real property who complained of an undisclosed deed restriction. On demurrer, the court found the purchasers were deemed to have constructive notice of the deed restrictions as the deed had been recorded. The purchasers thus had notice of the purported fraud when they received their copy of the recorded deed even though the defendant sellers failed to otherwise disclose the deed restriction or explain its effect on the resale value of the property to the purchasers. (*Id.* at pp. 1394–1396.)

The allegations in the first amended petition support the conclusion that the Griegos did not fall asleep, even if they may have been fully relaxed: They were lulled into trusting their real estate agent – their fiduciary – which they were entitled to do under *Brown* and *Neel v. Magana.* Unlike the plaintiffs in *Alfaro,* the petition alleges facts that would support the Griegos' claim that they did not have constructive knowledge of the 1994 grant deed until 2019 when the deed was recorded by Alan Penuela. We also point out that in 1993, even if the Griegos had realized they had signed a document that might have appeared to be a blank grant deed, it would not have advised them that Jenkins would later fill it out to transfer partial ownership of the Torch Street property without their consent.

We conclude the time of accrual for purposes of section 338(d) was not in 1994 but in 2019 when the Griegos received notice from Alan's lawyer. The Griegos' petition was timely under that statute.

17

## 4. *Section 366.2 – The One Year Statute of Limitations for Filing a Claim Against a Decedent*

We now turn to respondents' second line of defense — the statute of limitations under section 366.2. We conclude equitable estoppel precludes respondents from asserting a bar to the Griegos' claims.

Section 366.2, subdivision (a) provides, "If a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply." In subdivision (b), section 366.2 further provides that its limitations period "shall not be tolled or extended for any reason" except as set out in specified provisions of the Probate Code, none of which apply here.

Although the one-year statute of limitations in section 366.2 expressly states it may not be tolled or extended, equitable estoppel is available. (*Battuello v. Battuello* (1998) 64 Cal.App.4th 842, 848.) This is because the doctrines of equitable tolling and equitable estoppel are distinct. Tolling addresses when the statute of limitations accrues and what circumstances justify suspending the running of the limitations period. Equitable estoppel, on the other hand, " 'is not concerned with the running and suspension of the limitations period, but rather comes into play only after the limitations period has run and addresses itself to the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced

18

another into forbearing suit within the applicable limitations period.  Its application is wholly independent of the limitations period itself and takes its life, not from the language of the statute, but from the equitable principle that no man will be permitted to profit from his own wrongdoing in a court of justice.' " (*Id*. at pp. 847–848.)

 " ' "An estoppel may arise although there was no designed fraud on the part of the person sought to be estopped.  [Citation.] To create an equitable estoppel, 'it is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss.'  . . .  ' . . . Where the delay in commencing action is induced by the conduct of the defendant [the statute of limitations] cannot be availed of by him as a defense.' " ' " (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 384 (*Lantzy*).)

 Respondents acknowledge equitable estoppel may shield against section 366.2 but assert it is unavailable here.[10]  First, they argue the Griegos have forfeited the issue because the words "equitable estoppel" or their variants are not found anywhere in the record below.  We again decline to find forfeiture.  Whether on demurrer equitable estoppel applies to the facts as pled is a legal issue that does not depend upon weighing disputed facts. We accordingly may consider the issue for the first time on

---

[10]  In their brief, respondents concede, "So although equitable tolling cannot extend time under section 366.2, respondents accept that in appropriate cases, such as where decedent's representative induces a claimant not to timely file suit on a claim, equitable estoppel can apply."

appeal.[11] (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417 [appellate court may address purely legal questions presented for the first time on appeal when no factual determinations are required]; *Key v. Tyler* (2019) 34 Cal.App.5th 505, 540.)

Second, respondents argue the Griegos may not benefit from equitable estoppel because they signed the deed without reading it. This argument fails because equitable estoppel is concerned with respondents' conduct that results in the delay in bringing the action. That is, we look to Jenkins' failure to disclose the grant deed during his lifetime and Alan, standing in Jenkins' shoes as the representative of his estate, failing to record the 1994 grant deed for more than one year after Jenkins's death. The Griegos alleged it is this conduct that resulted in the delay. Under *Lantzy* and *Battuello,* respondents are estopped from asserting the statute of limitations as a defense in these circumstances.

Respondents rely on *Britton v. Girardi* (2015) 235 Cal.App.4th 721, 734 (*Britton*) to argue equitable estoppel requires " 'an excuse for late discovery of the facts.' " We are not persuaded. *Britton* was not decided on equitable estoppel grounds. It focused instead on equitable tolling and the delayed discovery rule.[12] (*Id.* at pp. 732–734.) Section 366.2 expressly

---

[11]    In any event, respondents have fully briefed the issue on appeal, as we discuss next.

[12]    According to *Britton*: "The fraudulent concealment doctrine will also *toll* the statute of limitations.  ' "[T]he ground of relief is that the defendant, having by fraud or deceit concealed material facts and by misrepresentations hindered the plaintiff from

20

states its limitations period may not be *tolled or extended.* *Britton* is not relevant to our discussion of equitable estoppel and its application to section 366.2.

**5.    *The Griegos Stated Causes of Action for Cancellation of Deed and Fraud***

Aside from their statute of limitations arguments, respondents also challenge the legal sufficiency of the causes of

---

bringing an action within the statutory period, is estopped from taking advantage of his own wrong." (*Pashley v. Pacific Elec. Ry. Co.* (1944) 25 Cal.2d 226, 231 [153 P.2d 325].)  "To take advantage of *this doctrine* ' " 'the plaintiff must show . . . the substantive elements of fraud . . . and . . . *an excuse for late discovery of the facts.*' " (*Snapp & Associates Ins. Services, Inc. v. Robertson* (2002) 96 Cal.App.4th 884, 890 [117 Cal.Rptr.2d 331].)' (*Prakashpalan* [*v. Engstrom, Lipscomb & Lack* (2014)] 223 Cal.App.4th [1105,] 1123 [167 Cal.Rptr.3d 832].)" (*Britton, supra,* 235 Cal.App.4th at p. 734 [italics added].)  The "doctrine" to which *Snapp & Associates* refers is the doctrine of fraudulent concealment, not the equitable estoppel doctrine.  (*Snapp & Associates, supra,* at p. 890, disapproved on a different ground in *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185.)

In any event, respondents have failed to establish factors similar to those which supported the statute of limitations bar in *Britton*.  There, the plaintiffs alleged their attorney misappropriated settlement funds but did not bring suit until 15 years after they received their settlement checks.  The court held the plaintiffs were placed on inquiry notice at the time they received their settlement checks because they were promised, but did not receive, a complete and accurate accounting or all pages of the settlement agreement.  Two retired judges had been appointed to conduct appeals of the allocation.  Yet, no plaintiff ever complained of the distribution or took advantage of the appeal process.  (*Britton, supra,* 235 Cal.App.4th at pp. 736–737.)

action for cancellation of deed and fraud. We address those arguments separately.

> a.    *Cancellation of Deed*

Respondents argue the Griegos have failed to state a cause of action to cancel the deed. Respondents rely on *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394 (*Rosenthal*) to argue the deed may only be reformed and not voided.

Respondents read *Rosenthal* too broadly. Its holding does not apply to a fiduciary who has a duty of full disclosure, as was present here. In *Rosenthal*, the court addressed when misrepresentations may excuse a failure to read a contract containing an arbitration clause. (*Rosenthal, supra,* 14 Cal.4th at p. 420.) *Rosenthal* expressly found "no authority for the proposition the fiduciary obligations of a broker extend to orally alerting the customer to the existence of an arbitration clause or explaining its meaning and effect." (*Id.* at p. 425.) Examining cases and authority discussing non-fiduciary relationships, the *Rosenthal* court held that equitable relief for fraud, through reformation of the written contract, may be allowed where a party's misrepresentations lead the second party to fail to read the writing. However, this circumstance did not allow the defrauded party to void the contract entirely. (*Id.* at pp. 420–423.) *Rosenthal* did not address when it is reasonable for a party in a fiduciary relationship to fail to read a contract due to the fiduciary's fraud, and what relief is available in that situation.

*Brown* examined *Rosenthal* and other cases when it indicated a plaintiff's failure to read a contract is justifiable where the parties are in a fiduciary relationship and the fiduciary has a duty to explain the terms of the contract between them. "In

such a situation, the defendant fiduciary's failure to perform its duty would constitute constructive fraud, the plaintiff's failure to read the contract would be justifiable, and constructive fraud in the execution would be established." (*Brown, supra,* 168 Cal.App.4th at p. 959 [citations omitted].)  In that circumstance, " ' "the fraud goes to the inception or execution of the agreement, so that the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all, mutual assent is lacking, and [the contract] is void." ' " (*Rosenthal, supra,* 14 Cal.4th at p. 415.)  The Griegos have stated a cause of action to void the deed.

> b.    *Fraud*

Respondents next contend the Griegos' negligence in failing to read the documents presented by Jenkins not only prevents them from benefiting from the discovery rule, it also means their allegations cannot satisfy the justifiable reliance element of a fraud claim.  We disagree.  Again, respondents ignore Jenkins's fiduciary relationship with the Griegos.  As we have discussed, *Brown* explained:  "Generally, it is *not reasonable* to fail to read a contract; this is true even if the plaintiff relied on the defendant's assertion that it was not necessary to read the contract. . . .  This presumes, however, that the parties were dealing *at arm's length.* . . .  If the defendant is in a fiduciary relationship with the plaintiff which requires the defendant to explain the terms of a contract between them, the plaintiff's failure to read the contract would be reasonable." (*Brown, supra,* 168 Cal.App.4th at p. 959 [fn. omitted].)  In their petition, the Griegos have alleged that, under the circumstances, they justifiably relied on the fraud.

We also reject respondents' contention that the first amended petition failed to plead fraud with sufficient particularity. " 'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) The Griegos alleged that Jenkins was their real estate agent who caused them to unknowingly, and in justifiable reliance, sign a grant deed transferring partial ownership of the Torch Street property to himself and others without the Griegos' knowledge or consent. These allegations adequately state a cause of action for fraud. Although the Griegos may not have alleged with great detail Jenkins's motivations, how he executed his scheme, the participation, or lack thereof, of the Penuelas and Dregers in Jenkins's scheme, and when Alan learned of the 1994 grant deed, the allegations were sufficient to satisfy the particularity requirement, certainly given that Jenkins and Alan would have known the additional details. " 'Less specificity is required when "it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy." ' " (*Citizens of Humanity, LLC v. Costco Wholesale Corp.* (2009) 171 Cal.App.4th 1, 20, disapproved on a different ground by *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 337.)

### *DISPOSITION*

The judgment is reversed with directions to vacate the orders sustaining the demurrer without leave to amend and dismissing the petition, and to enter a new order overruling the demurrer. The Griegos shall recover their costs on appeal.


RUBIN, P. J.

WE CONCUR:


MOOR, J.


KIM, J.